IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

WAYNE MADOLE                                                                                    PLAINTIFF
ADC #158959

v.                                      No: 5:16-cv-00377 JLH-PSH

RONALD STUKEY                                                                                DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Wayne Madole filed a complaint pursuant to 42 U.S.C. § 1983 on December 19, 2016, alleging that he received inadequate medical care for a lump in his left testicle while he was at the Tucker Unit of the Arkansas Department of Correction (ADC) in 2016. *See* Doc. No. 2. Defendant Rory L. Griffin was dismissed on August 25, 2017. *See* Doc. Nos. 64 & 69. Unnamed Doe defendants were dismissed on October 25, 2017. *See* Doc. Nos. 72 & 73. Dr. Guy Michael Henry, Jason Kelley, Timothy Faloon, Ramona Huff, and Denise Krablin were dismissed on

November 21, 2017.  *See* Doc. Nos. 74 & 75.  Madole's remaining claims against Dr. Stukey were limited to the issues and the time period raised in grievance VSM16-03128.  *Id.*

Dr. Stukey filed a motion for summary judgment, a brief in support, and a statement of facts asserting that he is entitled to qualified immunity with respect to Madole's claims.  Doc. Nos. 79-81.  Madole filed an objection and a statement of facts, Doc. Nos. 83 & 84, and Dr. Stukey filed a reply, Doc. No. 85.

For the reasons described herein, the undersigned recommends that Dr. Stukey's motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

The facts listed below are taken from those submitted by Dr. Stukey that are supported by the following documents: Madole's prison medical records from July 21, 2016, to December 25, 2016 (Doc. No. 81-1); a copy of Madole's deposition transcript (Doc. No. 81-2); Madole's relevant grievance records (Doc. No. 81-3); and an affidavit by Dr. Jeffrey Steive (Doc. No. 81-4). Madole does not specifically dispute any of the facts alleged by Dr. Stukey. *See* Doc. Nos. 83 & 84. Instead, Madole generally claims that he has provided sufficient evidence of material facts in dispute. He cites no specific documents to support his contention other than the UAMS ultrasound report which he argued would show that Dr. Stukey misquoted the results. To resolve this factual issue, the Court ordered Dr. Stukey to supplement the record with a copy of the ultrasound report. Doc. No. 86. The ultrasound report has been filed and does not support Madole's argument. Doc. No. 87-1. Madole also claims that Dr. Stieve's opinion should not be allowed into evidence because he was not present during consultations and had only reviewed a portion of Madole's medical records. However, Madole does not identify which records Dr. Stieve did not review or how they might alter his opinion. Because Madole failed to specifically controvert the facts set forth in Defendants' statement of undisputed facts, Doc. No. 81, those facts are deemed admitted.

*See* Local Rule 56.1(c).  Madole cannot create questions of fact by merely claiming some exist. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

Madole alleges that Dr. Stukey did not provide appropriate medical care to Madole while he was housed at the Varner Unit between August 25, 2016, and December 19, 2016, the date Madole filed this lawsuit.  Doc. No. 2; Doc. No. 81-2 at 29.  Dr. Stukey examined Madole for complaints of testicular/scrotal pain three times during that period of time: on September 9, 2016; October 26, 2016; and December 3, 2016.  Doc. No. 81-4 at 1-2; Doc. No. 81-1 at 18, 32 & 38.  As previously noted, Madole's claims have been limited "to the issues and the time period raised in VSM16-03128."  Doc. No. 75.  Grievance number VSM16-03128 concerns one clinical encounter with Dr. Stukey, which occurred on September 9, 2016.  Doc. No. 81-3; Doc. No. 81-1 at 18.

Madole was referred to the University of Arkansas for Medical Sciences (UAMS) for an ultrasound of his testicles and scrotum in the Spring of 2016.  *See* Doc. No. 81-2 at 40-41 & 43. Madole was examined by non-party physician, Dr. Guy Michael Henry, on July 21, 2016.  Doc. No. 81-1 at 1.  Dr. Henry noted that the ultrasound of Madole's testicles and scrotum "failed to reveal any definite abnormality."  Doc. No. 81-4 at 2; Doc. No. 81-1 at 1.  Dr. Henry ordered 500 milligram Naproxen for Madole's complaints of pain twice per day with refills until January 29, 2017.  *Id.*  On August 25, 2016, Madole was transferred to the Varner Super Max Unit. Doc. No.

4

81-4 at 2; Doc. No. 81-1 at 6. Dr. Stukey was the unit medical director at the Varner Super Max Unit at that time. Doc. No. 81-4 at 2.

On September 9, 2016, Dr. Stukey examined Madole for the first time. Doc. No. 81-4 at 2; Doc. No. 81-1 at 18. Dr. Stukey noted that Madole first noticed a left testicle nodule in March 2016. *Id.* Dr. Stukey noted that an ultrasound in May 2016 indicated good blood flow to both testes and epidydimi and that there were no testicular masses. *Id.* Dr. Stukey noted a scrotal mass that was "seemingly benign." *Id.* Dr. Stukey noted he would follow up in three months and that Madole agreed with the plan of care. Doc. No. 81-4 at 2; Doc. No. 81-1 at 18. In Dr. Jeffrey Stieve's opinion, Dr. Stukey provided Madole with appropriate care at that examination. Doc. No. 81-4 at 2.

Dr. Stukey examined Madole again on October 26, 2016, and December 3, 2016. Doc. No. 81-4 at 2; Doc. No. 81-1 at 32 & 38. At the October visit, Dr. Stukey ordered testing for Chlamydia, and placed Madole on 800 milligrams Ibuprofen for pain three times per day with refills until January 24, 2017. Doc. No. 81-4 at 2; Doc. No. 81-1 at 32. The Chlamydia test was negative. Doc. No. 81-4 at 3; Doc. No. 81-1 at 32. At the December visit, Dr. Stukey noted that the ultrasound from May 2016 revealed a "subcutaneous tubularstructure representing possible infectious versus inflammatory process." Doc. No. 81-4 at 2-3; Doc. No. 81-1 at 38. Dr. Stukey submitted a consultation request that Madole be evaluated by an outside urologist. Doc. No. 81-4 at 3; Doc. No. 81-1 at 38. Madole had no job assignment during the relevant period of time, and testified that he rarely left his cell during the relevant period of time. Doc. No. 81-4 at 3; Doc. No. 81-2.

In Dr. Stieve's opinion, Dr. Stukey provided appropriate care at both the October and December visits. Doc. No. 81-4 at 2-3. Dr. Stieve also opined that Madole received appropriate

5

medical care for his complaints of testicular/scrotal pain, and that treatment with non-steroidal anti-inflammatory drugs is appropriate. Doc. No. 81-4 at 3. Dr. Steive also concluded that Dr. Stukey appropriately advised Madole to refrain from self-exams that could cause an exacerbation of symptoms and that Dr. Stukey's referral of Madole to an outside urologist was appropriate after medical monitoring for a period of time. Doc. No. 81-4 at 3.

### IV. Analysis

#### A. Sovereign Immunity

Madole brings suit against Dr. Stukey in both his official and individual capacities. *See* Doc. No. 2 at 2. Madole sought compensatory and punitive damages against Dr. Stukey.[1] *Id.* at 11-12. A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989); *Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, the undersigned recommends that Madole's official capacity claims for money damages be dismissed with prejudice.

#### B. Qualified Immunity

Dr. Stukey argues he is entitled to qualified immunity with respect to Madole's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457

---

[1] Due to the dismissal of defendants Griffin and Kelley, Madole's original request for an injunction ordering defendants Griffin and Kelley to allow him to be seen by a urologist to provide further evaluation is now moot. The Court also notes that according to his deposition testimony, his appointment with an urologist had been delayed several times, and Madole acknowledged that Dr. Stukey made the referral but would not be responsible for when it was scheduled. *See* Doc. No. 81-2 at 75-76.

6

U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To succeed with an inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).[2]

---

[2] *See, e.g., Reid v. Griffin*, 808 F.3d 1191, 1192 (8th Cir. 2015) (holding that an inmate's disagreement with "diagnosis and treatment decisions is not actionable under § 1983); *Rowe v. Norris*, 198 Fed. Appx. 579, 580-81 (8th Cir. 2006) (no constitutional violation occurred where plaintiff disagreed with the treatment he received); *Bender v. Regier*, 385 F.3d 1133, 1337 (8th Cir. 2004) (holding that negligence in diagnosis or treatment of medical condition is not sufficient to establish a constitutional violation); *Prater v. Dep't of Corr.*, 11 Fed. Appx. 668, 669 (8th Cir. 2001) (holding that plaintiff failed to establish deliberate indifference where plaintiff did not allege he was "denied, delayed or refused" treatment, only that specific treatment was not provided); *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (mere disagreement with the course of medical treatment is insufficient to state Eighth Amendment claim).

Madole claims that Dr. Stukey was deliberately indifferent to his serious medical needs because Dr. Stukey did not schedule a follow-up until three months after the September 9, 2016 encounter, and because he did not prescribe Madole any scrotal support.  Madole further argues that the medication prescribed by Dr. Stukey did not help him, and that Dr. Stukey should have ordered an MRI or CT scan as allegedly directed by the UAMS ultrasound report.  Finally, Madole claims that Dr. Stukey canceled Madole's off-site appointments on more than one occasion.  Madole offers no proof to support that contention, and it directly conflicts with his sworn deposition testimony in which he acknowledged other reasons for two rescheduled appointments, and acknowledged that Dr. Stukey makes referrals but is not directly involved in scheduling appointments.  *See* Doc. No. 81-2 at 75-76.

The undisputed facts establish that Dr. Stukey was not deliberately indifferent to Madole's serious medical needs.  Madole's claims amount to a mere disagreement with the medical treatment provided by Dr. Stukey.  Even if Dr. Stukey's treatment of Madole amounted to medical negligence (which is not an issue the Court is asked to find), such a finding would not show that Dr. Stukey was deliberately indifferent to Madole's serious medical needs.  On the visit in question, Dr. Stukey adopted a wait-and-see approach after reviewing the UAMS ultrasound report and examining Madole, prescribed anti-inflammatory medications, and instructed Madole to leave the testicular lump alone.  *See* Doc. No. 81-1 at 18.  Dr. Stieve opines that all of those actions were medically appropriate.  Doc. No. 84-4.

Madole attempts to create an issue of fact by claiming the UAMS ultrasound report contradicts Dr. Stukey's decision to monitor the lump with no immediate testing.  He claims that Dr. Stukey told him the MRI or CT scan would not be approved unless his condition got worse.

Doc. No. 2 at 5.  The UAMS ultrasound report specifically states "normal sonographic appearance of testicles" and

> Subcutaneous, tublar, hypoechoic, solid appearing structure seen at the base of the penis approaching left hemiscrotum.  Finding is indeterminate in etiology, possibly representing sequelae of remote infections versus inflammatory process.  **MRI versus CT scan** *can be considered if further evaluation is desired*.

Doc. No. 87-1 (emphasis added).  Madole accurately quoted the ultrasound report in his complaint, but now argues that the report recommended a follow-up with an MRI or CT scan.  *See* Doc. No. 2 at 3; Doc. Nos. 83 & 84.  The report does not recommend or direct a follow-up test.  Instead, it states that a follow-up MRI or CT-scan may be considered if desired by the referring physician.  Dr. Stukey's decision to monitor Madole's condition for 90 days without ordering additional testing at that time was not in contravention of the ultrasound report's recommendation, nor was it deliberately indifferent to Madole's condition.  Madole's disagreement with Dr. Stukey's treatment plan does not amount to a constitutional violation.  For these reasons, the undersigned recommends that Dr. Stukey be awarded summary judgment on Madole's deliberate indifference claim and that Madole's claims against Dr. Stukey be dismissed with prejudice.

## IV.  Conclusion

The undersigned recommends that Dr. Stukey's motion for summary judgment be granted and that Madole's claims against Dr. Stukey be dismissed with prejudice.  Madole's official capacity claims for money damages are barred by the doctrine of sovereign immunity.  Further, Dr. Stukey is entitled to qualified immunity on Madole's individual capacity claims because the undisputed material facts show that Dr. Stukey was not deliberately indifferent to Madole's serious medical needs.

IT IS THEREFORE RECOMMENDED THAT:

Stukey's motion for summary judgment (Doc. No. 79) be granted, and Madole's claims against him be dismissed with prejudice.

DATED this 10th day of September, 2018.

_____
UNITED STATES MAGISTRATE JUDGE